IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

TAMISHA WALKER,     )
             )
      Plaintiff,  )  Case No. 04-1742-KI
             )
  vs.        )  OPINION AND ORDER
             )
PROVIDENCE HEALTH SYSTEM-  )
OREGON, an Oregon nonprofit   )
organization,        )
             )
      Defendant. )

Daniel Snyder
Sara Thistlethwaite
1000 S. W. Broadway, Suite 2400
Portland, Oregon  97205

   Attorneys for Plaintiff

Jeffrey J. Druckman
Janine C. Blatt
Druckman & Blatt, P.C.
0424 S. W. Iowa Street
Portland, Oregon  97239

   Attorneys for Defendant

KING, Judge:

Plaintiff Tamisha Walker brings claims for racial discrimination pursuant to 42 U.S.C. § 2000e-2 and ORS 659A.030, a state claim for workers' compensation retaliation, and a state claim for disability discrimination against her previous employer, Providence Health System ("Providence"). Before me is Providence's Motion for Summary Judgment (#19) seeking judgment against each of plaintiff's claims. I also have before me Plaintiff's Motion to Strike Part of Defendant's Reply (#47), and Providence's Motion to Strike Portions of Plaintiff's Declaration (#45). For the following reasons, I grant Providence's motion for summary judgment, deny plaintiff's motion to strike Providence's reply, and grant in part Providence's motion to strike.

## BACKGROUND

Jane Wilson and Julie Hannah hired plaintiff Tamisha Walker for the position of Health Unit Coordinator ("HUC") at the Family Maternity Unit at Portland Providence Medical Center. Plaintiff had no experience as an HUC or in a maternity unit. However, plaintiff had worked in the medical field since 1997, and is licensed by the State of Oregon as a certified dialysis technician. In her job interview, Wilson and Hannah told plaintiff that it would take about six months to learn the job and it could take up to a year to feel comfortable in the position. Plaintiff contends she was told she would train with another HUC on a daily basis for six months.

Plaintiff worked for Providence from September 21, 2003 to December 31, 2003, in a part-time position. During these months, she worked 216 hours, which is the equivalent of 27 eight-hour days.

When plaintiff was working in the maternity unit, she was the only African-American HUC in the maternity unit on all shifts at that time. Trena Johnson was the only other African-American employee working on all shifts in the maternity unit, but her position was a birth clerk. In the five years prior to hiring plaintiff, Providence had not hired an African-American to hold the position of HUC in the maternity unit.

Johnson told plaintiff that another African-American woman, Doreen Reese, who was an HUC/CNA on the maternity wing, left the unit after only a few weeks because of harassment by the nurses. Johnson told plaintiff that several years before plaintiff started working at Providence, two nurses, Cindy Rae and Cindy Schlecht, took turns wearing a nappy-haired Buckwheat wig at work. Johnson also recounted to plaintiff the time an employee told a story about her elderly father who regularly used a derogatory racial term, which the employee quoted.

Providence asserts plaintiff received approximately 62 hours of training, but plaintiff disputes that the time recorded as training actually reflected the training plaintiff received. Lisa Anderson was plaintiff's primary trainer. She reviewed with plaintiff the preparation of charts, how to take patients to rooms, how to stock rooms, use of the computer, and use of the telephone. Plaintiff disputes that Lisa Anderson adequately trained her.

Plaintiff also received training in the following areas: use of the computer system, ordering x-rays and wheelchairs, ordering lab tests, accessing lab reports, tear-downs of charts, printing current patient information, entering census information, printing advance directives from patients, and ordering certain equipment for patients. Because of her training in these areas, plaintiff admits she knew how to perform these job duties.

Plaintiff admits that she was able to do all of her duties competently and properly. In her limited time on the job, plaintiff felt that she had mastered a host of skills. She understood that if she had continued working in the maternity unit, she would have continued learning things about the job.

Plaintiff asserts that on December 16, 2003, Wilson called plaintiff at home, told her that she was on track, and offered additional training with HUC Janie Robinson. Providence disputes that the offer of training occurred by telephone on this date. Nevertheless, after the events of December 17, 2003, described below, Robinson spent a day watching plaintiff work and told plaintiff that she was doing fine.

Plaintiff asserts that on December 17, 2003, Lisa Anderson, Sara Duchemin and Cindy Schlecht were discussing plaintiff and called her "stupid." Providence contends that the three individuals were discussing whether there was a way they could advise plaintiff of the correct way to order labs–according to Providence a baby had been needlessly poked with a needle due to plaintiff having ordered the wrong lab tests. In any event, it is undisputed that no racial terms or references were used in the conversation. Plaintiff acknowledges that it was not unprecedented for one staff member to criticize another. At times staff members have been critical, abrupt, or rude toward Caucasian employees. However, plaintiff had not heard a Caucasian called "stupid."

Plaintiff asked if she could go home, and was permitted to do so. Wilson and Hannah telephoned plaintiff at home. Wilson said she had heard what happened and that she had spoken to the two employees involved and under no circumstances would someone be treated in such a way on her unit. Wilson and Hannah asked plaintiff to come back to the hospital for a meeting

with them that afternoon. The purpose of the meeting was to be supportive of plaintiff, to assure her that the issue was being dealt with, to review how she was progressing in the job, to encourage her to see Wilson or Hannah if she had any problems or questions, and to offer her additional training if she felt it was needed. After the meeting, nurse Sarah Duchemin apologized to Walker for the incident.

Lynn Anderson expressed concern that plaintiff had not received adequate training, but commented that she was doing well for the amount of training she had received.

On December 22, 2003, plaintiff went home for lunch. Charge nurse Joyce Sykora told plaintiff that she should not go home during her 30-minute lunch break. She also said that plaintiff should not wear her hospital scrubs outside the building. Plaintiff does not allege that Sykora used any racial terms or made any racial references in her conversation. Plaintiff was not disciplined over the issue.

Plaintiff believes Providence did not tell other employees that they could not leave the hospital for lunch. Providence asserts staff have a 30-minute lunch break, and the department found it impractical for employees to go home for lunch and return in time. HUCs were needed back in time because the maternity unit is an acute nursing facility. Plaintiff denies that timeliness was ever a problem for plaintiff. In any event, according to plaintiff, the difference is that plaintiff was told where she could spend her lunch break, while others were cautioned only as to timeliness.

After plaintiff's conversation with Sykora, Providence put out announcements that employees were not to wear scrubs outside the hospital. In December 2003, other than this announcement, there were no written policies prohibiting wearing scrubs outside the hospital,

and there were no written policies prohibiting leaving the hospital for lunch. Staff in the maternity unit wore scrubs to the hospital cafeteria and outside the hospital.

Plaintiff was diagnosed with adjustment disorder with anxiety on December 31, 2003, and she stopped working on that date. Plaintiff's condition started about one month after plaintiff began working as an HUC. She did not experience any symptoms when she was not at work. A workers' compensation form completed by Dr. Yoshinaga reported that plaintiff was not eligible for modified work. Dr. Yoshinaga did not change his opinion until January 30, 2004, at which time he determined that plaintiff could return to work other than in the maternity unit. Plaintiff received treatment for her condition for a period of approximately three months after she stopped working. She has not sought or received any medical treatment for the condition since then, but plaintiff asserts that her symptoms persisted after that time.

Plaintiff's workers' compensation claim was denied on January 14, 2004.

Human Resources Manager Linda Miller told plaintiff that if she was unable to return to her position in the maternity unit, she could apply for other positions in the Providence system, but that Providence would not simply place her in another position without receiving an application first.

Miller subsequently informed plaintiff by letter that if she did not transfer to another position by February 23, 2004, her employment with Providence would terminate. Plaintiff understood this. Plaintiff applied for many positions with Providence while she was on leave, prior to her termination. Miller was one of the people responsible for determining which applications were forwarded to managers for consideration. Miller had discretion to put advisory

notes to managers on applications, such as alerting a manager of an unfinished probation period or orientation period.

Plaintiff never found another position within Providence. Her employment terminated on February 23, 2004.

Providence's policy provides that an employee who has a work-related injury, and who is not able to perform the employee's former work, will be offered the next position that is available and suitable. Providence denies that plaintiff's injury was work-related because plaintiff's workers' compensation claim was denied.

Plaintiff did not find another job until June 2004.

## MOTIONS TO STRIKE

Providence moves to strike specific sentences and paragraphs from plaintiff's declaration as inadmissible hearsay. Plaintiff argues that the statements are relevant to her hostile work environment claim and are admissible under exceptions to the hearsay rule.

First, Providence objects to a number of statements in Walker's declaration reciting the negative statements of other nurses complaining about plaintiff. The last sentences of paragraph 18, the third sentence of paragraph 27, paragraph 52, and paragraph 57 of plaintiff's declaration contain these statements. Plaintiff argues the statements are admissible as present sense impressions and the declarant's state of mind. Alternatively, plaintiff argues the statements are not offered for the truth of the matter asserted, but for the mental impression the statements created on plaintiff as related to her hostile work environment claim.

All of the statements involve hearsay within hearsay. In paragraphs 18, 27, and 57, plaintiff reports what Trena Johnson told plaintiff that Johnson overheard another nurse say, and

in paragraph 52, plaintiff reports what Lynn Anderson told plaintiff that Anderson heard other nurses say. I conclude plaintiff's proffered exceptions to the hearsay rule are inapplicable; however, I accept that the statements may be relevant to show she subjectively felt the conduct was severe and pervasive, to support a hostile work environment claim, and are not offered for the truth of the matter asserted.

Second, Providence objects to plaintiff's recitations of Johnson's report related to past alleged racial incidents. Paragraphs 25, 26, and 54 of Walker's declaration contain these statements. Plaintiff asserts the statements are present sense impressions or state of mind exceptions to the hearsay prohibition. With regard to paragraphs 25 and 26, I accept her statements as evidence of her subjective belief that the conduct was severe and pervasive, as opposed to being offered for the truth of the matter asserted. Paragraph 54 contains plaintiff's statement of what Johnson told her Johnson had previously told the Human Resources Manager Linda Miller. Accordingly, the paragraph contains hearsay within hearsay, and plaintiff has not asserted a proper hearsay exception for Johnson's second statement. I strike paragraph 54.

Providence also objects to statements contained in paragraphs 43, 46, and 60, which read that plaintiff was present at the deposition of a specified witness and heard the witness say something. I strike the second and last sentences of paragraph 43, the third sentence of paragraph 46, and the last sentence of paragraph 60 because these statements are hearsay. I will rely instead on the deposition transcripts themselves.

Finally, the third sentence of paragraph 17 is irrelevant, and I strike it.

As for Providence's remaining objections, the decision to grant or deny summary judgment is based on the court's review of the evidence that has been submitted. I will take

Providence's objections into account with regard to the conclusory nature of plaintiff's statements in her declaration, but I will not rule on Providence's objections with regard to paragraphs 16, 43, 44, and 47. Therefore, Providence's motion to strike is granted in part and denied in part.

Plaintiff moves to strike section I of Providence's reply brief in which Providence makes arguments similar to those already made in its motion to strike, only this time about plaintiff's declaration and plaintiff's concise statement of material facts. Plaintiff argues that Providence has abused the process by filing a motion to strike *and* making these arguments in its reply brief. Plaintiff also seeks to strike sections III.C and and III.D of Providence's reply brief, in which Providence attacks plaintiff's hostile work environment and retaliation claims.

I deny plaintiff's request that I strike sections III.C and III.D from the Providence reply brief. Providence properly replied to these new claims that plaintiff first asserted in a clear way in her response brief. Nothing in the complaint would necessarily alert Providence that plaintiff asserted a hostile work environment and a retaliation claim. However, I accept plaintiff's motion to strike as a sur-reply to Providence's arguments with respect to these claims.

Similarly, I do not strike section I of Providence's reply. Although Providence should have moved to strike any statements in the declaration that it believes are not consistent with plaintiff's deposition, rather than raising the issue in its reply brief, as I stated above, the decision to grant or deny summary judgment is based on the court's review of the relevant evidence that has been submitted. Accordingly, while I will consider Providence's arguments about any alleged distortions of the evidence, I will also consider plaintiff's evidence in the light most favorable to plaintiff. Plaintiff's motion to strike is denied.

# DISCUSSION

I.      <u>Race Discrimination</u>

Providence contends that plaintiff's intentional race discrimination under federal and Oregon state law must fail because plaintiff has not established all elements of her prima facie case. In particular, Providence argues plaintiff has not shown that the actions constituted adverse employment actions or that a similarly situated employee received more favorable treatment. In addition, Providence asserts that even if plaintiff has met her prima facie burden, she has insufficient evidence of pretext to withstand a motion for summary judgment.

Both federal and state law prohibit employers from discharging or otherwise discriminating against an employee based on race with respect to compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2; ORS 659A.030(1). To prove a Title VII disparate treatment claim, or discrimination under Oregon law, a plaintiff must establish a prima facie case of discrimination. <u>Snead v. Metropolitan Property Casualty Insurance Co.</u>, 237 F.3d 1080, 1090-93 (9th Cir. 2001); <u>Henderson v. Jantzen, Inc.</u>, 79 Or. App. 654, 657, 719 P.2d 1322 (1986).

A prima facie case may be demonstrated by direct evidence of discriminatory intent or may be based on a presumption arising from factors set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994). Generally stated, the factors are: (1) membership in a protected class; (2) qualification for the job or satisfactory performance of the job; (3) an adverse employment decision; and (4) different treatment than those similarly situated outside of the protected class. <u>McDonnell Douglas</u>, 411 U.S. at 802.

The requisite degree of proof necessary to establish a prima facie case for a Title VII claim on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis, 26 F.3d at 889. "The plaintiff need only offer evidence which 'gives rise to an inference of unlawful discrimination.' . . . Establishment of a prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." Id. (citations omitted). Once plaintiff has established a prima facie case, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating some permissible reason for the adverse action. Id. "Once the defendant fulfills this burden of production by offering a legitimate, nondiscriminatory reason for its employment decision, the . . . presumption of unlawful discrimination 'simply drops out of the picture.'" Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993)).

Then the burden shifts to the plaintiff to show that the defendant's reason is a pretext for another motive which is discriminatory. Id. "When evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal *prima facie* case based on a McDonnell Douglas type presumption." Id. at 890-91. Plaintiff is not required, however to produce additional, independent evidence of discrimination at the pretext stage if the prima facie case raises a genuine issue of material fact regarding the truth of the employer's proffered reasons. Chuang v. University of California Davis, 225 F.3d 1115, 1127 (9th Cir. 2000).

If the plaintiff offers direct evidence of a discriminatory motive, a triable issue on the actual motivation is created "even if the evidence is not substantial." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998). The plaintiff may also offer circumstantial evidence

that tends to show that the proffered motive is a pretext because it is inconsistent or unbelievable.

A.    Prima Facie Case:  Adverse Employment Action

Providence argues that none of the events that occurred during plaintiff's employment constitute adverse employment actions.  There is little available case law in the Ninth Circuit about the meaning of adverse employment action in the context of a disparate treatment claim. The Ninth Circuit considers an adverse employment action in the context of retaliation to be treatment that "is reasonably likely to deter employees from engaging in protected activity."  Ray v. Henderson, 217 F.3d 1234, 1242-43 (9th Cir. 2000).  Examples include termination, lateral transfers, negative job references or performance reviews, changes in work schedule or location, and refusal to consider the employee for promotion.  Id.; Brooks v. City of San Mateo, 229 F.3d 917, 929 (9th Cir. 2000);  Chuang, 225 F.3d at 1125.   Indeed, an adverse action is not "every offensive utterance by co-workers, because offensive statements by co-workers do not reasonably deter employees from engaging in protected activity."  Ray, 217 F.3d at 1243.  Finally, only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute adverse employment actions.  Brooks, 229 F.3d at 929.

Using these cases as guidance, plaintiff identifies three actions that she thinks constitute adverse employment actions:  inadequate training, Sykoras' singling plaintiff out for wearing her scrubs home during her lunch break and prohibiting her from going home for lunch, and her termination.

Plaintiff argues she was told her training would last six months, but she was trained less than eight days of the three months that she worked in the maternity unit.  Furthermore, of those eight days, although the time was marked as training, it did not accurately reflect the time spent

in training–she was sometimes just watched by a supervisor. This lack of training, according to plaintiff, affected her in two ways. First, as a result of the inadequate training, her coworkers viewed her as less capable than other HUCs. Second, according to plaintiff, when she applied for other positions in other departments, Human Resources Manager Miller noted that plaintiff did not have enough training as an HUC.

Inadequate training could hypothetically constitute an adverse employment action if it affected the terms and conditions of plaintiff's employment or deprived her of the necessary tools to do her job. However, a coworker's perception that plaintiff was incapable of doing the job, without more, is simply not an adverse employment action. Brooks, 229 F.3d at 929 ("[O]stracism suffered at the hands of coworkers cannot constitute an adverse employment action").

As for plaintiff's inability to land another position at Providence, plaintiff presents no evidence that Miller commented on plaintiff's lack of training. In fact, plaintiff presents no evidence that Miller commented on any of plaintiff's applications, only that Miller has the *discretion* to indicate on an application that plaintiff failed to complete her probationary period.

More importantly, plaintiff has produced no evidence that she was in fact not trained properly. Although plaintiff asserts that she was not adequately trained by Lisa Anderson, plaintiff has conceded that she received training in several specific areas and knew how to perform those job duties, that she was able to do all of her job duties competently and properly, and that she understood if she had stayed she would have continued learning. She also admits that manager Wilson and trainer Janie Robinson told her she was doing fine. I cannot find that lack of training in these circumstances constitutes an adverse employment action.

With regard to the second adverse employment action, plaintiff argues that singling out plaintiff for eating lunch at home and wearing her scrubs home constitutes an adverse employment action. She was not on call during lunch, there was no written policy prohibiting her from going home, and other employees went to Starbucks or fast food restaurants for lunch. As for the scrubs, plaintiff asserts the only policy in existence, at the time she was rebuked, was a prohibition on employees taking scrubs home and leaving them at home, and employees often left the department and the hospital wearing their scrubs. According to plaintiff, Providence did not counsel any other employee about wearing scrubs outside the maternity unit.

I do not find Sykora's statement to be an adverse employment action. Plaintiff admits she was not disciplined for the incident, and she suffered no significant disadvantage at work as a result of the reprimand. In the retaliation context, courts in other circuits have held that mere criticism is insufficient to constitute an adverse employment action. Sweeney v. West, 149 F.3d 550, 556 (7th Cir. 1998) (unfair reprimands); Flannery v. Trans World Airlines, Inc., 160 F.3d 425, 428 (8th Cir. 1998) (admonishment). Even considering the facts in the light most favorable to plaintiff, and ignoring Providence's evidence that other employees were counseled about wearing scrubs home, plaintiff identifies no material harm that she suffered because Sykora counseled her.

Finally, plaintiff argues, the third adverse employment action was Providence's termination of her employment. According to plaintiff, although Providence kept plaintiff's position open for her, it knew she could not return to that position because of her diagnosis of adjustment disorder with anxiety. In addition, plaintiff asserts that Human Resources Manager Miller placed notes on plaintiff's applications referencing the fact that plaintiff lacked training,

which led to plaintiff's termination. Finally, at oral argument, plaintiff argued that Providence's policy requires the provision of work when several conditions have been met, and Providence failed to comply with this policy.

I find that consistent with the facts in the record, plaintiff has not alleged an adverse employment action. Plaintiff abandoned her position and, even though plaintiff did not qualify for leave under the Family Medical Leave Act or Oregon Family Leave Act because she had not worked enough hours, Providence kept the job open for two months.

The problem with plaintiff's argument is that she has not provided any evidence to support a finding that Providence's purported refusal to hire her for another position was related to some unlawful reason. While there is some evidence that she applied for other positions with Providence, she has not submitted a list of those positions or the qualifications required for those positions.

Additionally, plaintiff has not submitted any evidence that Miller declined to forward her applications to the hiring managers. Miller testified that it is her job to screen applications and forward them to managers, and she sends all applications for candidates that are qualified. Miller screens candidates by giving priority to those with hospital experience. Miller also testified that, in the abstract, she would likely forward plaintiff's application since plaintiff has hospital experience, but Miller might have noted on the application that plaintiff failed to complete her probationary period. Miller testified that she has discretion to do so. Miller testified that these notes are advisory only, and managers often do not take her advice.

Thus, the only evidence in the record is that Miller likely presented plaintiff's applications to managers, but may have remarked on plaintiff's probationary status. Other

managers besides Miller would have made any decisions not to accept plaintiff in a new position, and plaintiff has presented no evidence that such managers considered any comments Miller may have made. Although the burden for making out a prima facie case is light, plaintiff nevertheless bears the burden of presenting evidence, beyond her own conjecture, that Providence refused to transfer her to another position for some unlawful reason.

Finally, Providence's workers' compensation policy did not require it to simply place her in the next available position because, since she did not qualify for workers' compensation benefits, her injury was determined not to be "job-related" or a "work injury" under the policy. Similarly, Providence had no obligation to offer plaintiff light duty work under its policy when plaintiff's claim was denied prior to her physician's release allowing her to return to modified work. Therefore, she did not qualify for application of the light duty workers' compensation policy.

No reasonable jury could find that Providence's acts objectively and substantially disadvantaged plaintiff.

B.   Pretext

Even assuming plaintiff satisfied her prima facie burden, plaintiff's case must necessarily fail because she cannot prove that Providence's legitimate reasons for these actions were pretext for discrimination. By her own admission, plaintiff received training and knew how to do her job. Providence also offers a legitimate reason for why it told plaintiff not to wear her scrubs home and why it told her not to go home from lunch. Plaintiff was told not to wear her scrubs home for purposes of infection control; HUCs assist in operating rooms, which are sterile environments, and can be exposed to blood-borne pathogens within the maternity unit, making

the wearing of scrubs home a risk. Plaintiff was told not to go home for lunch for reasons having to do with promptness and availability. Finally, Providence asserts plaintiff was terminated because she did not return to work from a leave of absence and did not find any other employment within Providence.

To avoid summary judgment, plaintiff must show that these reasons are false or that the true reasons for the actions are discriminatory. See Nidd's v. Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1996). There is no evidence that anyone referred to plaintiff's race; therefore, the evidence of pretext must be specific and substantial to create a triable issue of fact on whether Providence intended to discriminate. See Schuler v. Chronicle Broadcasting Co., 793 F.2d 1010, 1011 (9th Cir. 1986).

Plaintiff has failed to present any specific or substantial evidence that these reasons are false or a sham. The motive proffered by Providence is not inconsistent or unbelievable. I grant Providence's motion for summary judgment on plaintiff's disparate treatment claim.

II.    Hostile Work Environment

Providence contends that plaintiff has introduced a new claim, one not raised in the administrative process or in her complaint. Even if she has adequately exhausted and pled the claim, Providence argues the claim fails on the merits.

To establish federal subject matter jurisdiction over an employment discrimination claim, the plaintiff must have raised that claim or a claim that is "like or reasonably related" to it in an administrative action. Yamaguchi v. United States Department of the Air Force, 109 F.3d 1475, 1480 (9th Cir. 1997) (internal quotation omitted). The EEOC charge must be construed "with the utmost liberality." Id. (internal quotation omitted). The court has subject matter jurisdiction

over allegations of discrimination that either "fell within the scope of the EEOC's *actual*

investigation or an EEOC investigation which *can reasonably be expected* to grow out of the

charge of discrimination." Id. (internal quotation omitted, emphasis in the original).

Plaintiff's administrative complaint reads, in pertinent part: "I allege employment

discrimination in that Respondent treated me differently, discriminated against me, and retaliated

against me because of my race and because I filed a workers' compensation claim."

Providence's Reply Brief, Ex. 105. Providence asserts a claim of hostile work environment is

not "like or reasonably related to" a claim of intentional discrimination.

I find that plaintiff has adequately exhausted her hostile work environment claim. In

coming to this conclusion, I compare this case to another involving Providence as a defendant.

In Wakefield v. Providence Health, CV-01-288-KI, 2002 WL 1263977 (D. Or. 2002), I

determined that plaintiff had not exhausted her administrative remedies with regard to her hostile

work environment claim. Her charge of discrimination to the EEOC reported, "On January 5,

1999, I was discharged. I believe the reason I was suspended and then discharged is because of

my race, Black, in violation of Title VII . . . ." She described only the termination incident, and

did not identify any other perceived incidents of harassment.

In contrast, the record here establishes that plaintiff's hostile work environment claim

falls within the scope of the discrimination charge. Plaintiff asserted in the administrative action

that she was "treated differently and discriminated against" because of her race. Her

administrative complaint reports the alleged lack of training, that other employees called her

stupid, and that Sykora reprimanded her for going home for lunch and wearing her scrubs home

when other employees were not advised of these policies. Accordingly, because the hostile work

environment claim could reasonably be expected to grow out of these assertions of discrimination, plaintiff has exhausted her administrative remedies.

Providence further argues that even if plaintiff exhausted her administrative remedies, her complaint does not allege a hostile work environment.

Notice pleading "do[es] not require a claimant to set out in detail the facts upon which he bases his claim." <u>Yamaguchi</u>, 109 F.3d at 1481 (citation omitted). A short and plain statement of the claim is sufficient. <u>Id.</u> To make out a hostile work environment claim, plaintiff must show: "1) she was subjected to verbal or physical conduct of a racial nature, (2) this conduct was unwelcome, and 3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 642 (9th Cir. 2003). In addition, the working environment must both subjectively and objectively be perceived as abusive. <u>Id.</u> Whether a workplace is objectively hostile is determined based on the totality of the circumstances from the perspective of a reasonable person with the same fundamental characteristics as the plaintiff. <u>Id.</u>

In her Title VII claim, she asserts, "The plaintiff was subjected to discrimination with respect to the terms and conditions of employment because of plaintiff's race, and Providence changed the terms and conditions of employment based upon plaintiff's race." Complaint, ¶ 27. She has also alleged the same incidents as in her agency complaint. I find that plaintiff has adequately alleged a hostile work environment claim.

Nevertheless, I agree with Providence that there are numerous problems with plaintiff's claim. She has failed to identify any relevant conduct that could be deemed racial in nature. She concedes that there is no direct evidence of racial slurs or statements, or other physical conduct

of a racial nature. Instead, she points to events that occurred prior to her employment with Providence, as reported by Johnson, such as the nappy-haired wig incident, which occurred approximately seven years before plaintiff began working in the maternity unit, the use of a derogatory racial word in a story, which occurred approximately three years before, and Doreen Reese who felt unwelcome and mistreated, approximately four years before. According to plaintiff, this information, together with the "stupid" comment, Sykoras' singling plaintiff out, and criticism from other nurses about plaintiff's abilities made plaintiff feel subjectively stereotyped by her race. Furthermore, according to plaintiff, other employees were not reprimanded or counseled for criticizing plaintiff, and there was no meeting regarding racial issues.

Even if I accepted plaintiff's argument that the incidents that occurred during plaintiff's employment, against the backdrop of Johnson's reports of past behavior, constituted conduct of a racial nature, none of these incidents, separately or together, can be characterized as objectively severe and pervasive abuse. Indeed, in <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1031, 1036 (9th Cir. 1990), the court held the posting of a racially offensive cartoon, racial slurs, targeting of Latinos for rule enforcement, the provision of unsafe vehicles to Latinos, inadequate police backup for Latino officers, and illegal personnel files on Latinos did not constitute severe and pervasive conduct. <u>See</u> <u>also</u> <u>Vasquez</u>, 349 F.3d at 643. None of the conduct reported by plaintiff rises to the level of a Title VII violation. Accordingly, Providence is entitled to summary judgment on the hostile work environment claim.

III.  Retaliation

As in the previous claim, Providence again contends that plaintiff failed to allege retaliation under Title VII in her complaint.  Even if she has properly pled the claim, Providence asserts she has not established a prima facie case of retaliation.

In her federal discrimination claim, plaintiff alleges only that she "was subjected to discrimination with respect to the terms and conditions of employment because of plaintiff's race, and Providence changed the terms and conditions of employment based upon plaintiff's race."  Indeed, plaintiff cites only 42 U.S.C. § 2000e-2 and does not refer to 42 U.S.C. § 2000e-3, which is the portion of Title VII that prohibits retaliation.  Therefore, unlike the hostile work environment claim, plaintiff failed to plead a claim for retaliation under Title VII.

Even if plaintiff brought a claim for retaliation, Providence is entitled to summary judgment.  To establish a prima facie retaliation claim, a plaintiff must show (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision.  Raad v. Fairbanks North Star Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th Cir. 2003).

Plaintiff asserts she complained of discrimination to Human Resources Manager Miller.  Furthermore, when she was unable to return to work in the maternity unit, Providence rejected her applications for other positions for which she was qualified and refused to place her in conformance with its workers' compensation policy.  Plaintiff argues Providence's actions rise to the level of retaliation given the proximity of the actions to the complaint of racial discrimination.

As explained above, the only evidence in the record is that Providence accepted plaintiff's applications for other job openings, as it would any internal employee requesting a transfer. Plaintiff offers no evidence that Providence refused to consider her for other positions because she complained of discrimination. Only when it appeared that plaintiff would not return to the HUC position did Providence terminate plaintiff's employment. Furthermore, as explained above, plaintiff did not qualify for placement under Providence's workers' compensation policy. Therefore, even if plaintiff had asserted a claim for retaliation, she has not satisfied her prima facie case.

IV.    Unlawful Employment Practice–ORS 659A.040:  Workers' Compensation Retaliation

Providence argues that there is no evidence it retaliated against plaintiff for filing a workers' compensation claim.

ORS 659A.040 provides:

It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or has given testimony under the provisions of those laws.

To establish a prima facie case for retaliatory conduct under ORS 659A.040, a plaintiff must show "(1) That [the plaintiff] invoked the workers' compensation system; (2) that [the plaintiff] was discriminated against in the tenure, terms or conditions of employment; and (3) that [the employer] discriminated against [the plaintiff] in the tenure or terms of employment because he or she invoked the workers' compensation system." Stanich v. Precision Body and Paint, Inc., 151 Or. App. 446, 457, 950 P.2d 328 (1997).  An employer is free to terminate an

employee who has filed a workers' compensation claim as long as the termination is not motivated by the claim. Hardie v. Legacy Health System, 167 Or. App. 425, 6 P.3d 531 (2000).

As with her other claims, plaintiff argues that Providence's policy provides that when an employee returns from leave, Providence will place the employee in an available and suitable position. Providence failed to do so. Plaintiff argues alternatively that if the policy does not apply to her, the termination was motivated by her workers' compensation claim. Plaintiff points to the temporal proximity between the complaint and Providence's refusal to hire her, Miller's purported notes on plaintiff's applications about plaintiff not having completed her probationary period, and Providence's alleged unwillingness to meet with plaintiff about finding a position for her.

Providence replies that its policy applies to employees with work-related injuries; plaintiff's workers' compensation claim has been denied because it was not work-related. Accordingly, its policy did not apply to her. In addition, plaintiff's employment ended because she did not return to her position as an HUC, she was not entitled to FMLA or OFLA leave, and she was unable to secure other employment with Providence. The proximity in time between the filing of a workers' compensation claim and termination, without more, is not sufficient evidence to establish that the cause of the termination was the filing of a workers' compensation claim. Ledesma v. Freightliner Corp., 97 Or. App. 379, 383, 776 P.2d 43 (1989).

I agree with Providence. There is no evidence that Providence terminated plaintiff because she filed a workers' compensation claim. Plaintiff points to no evidence that Providence was unwilling to meet with plaintiff about finding a position for her–plaintiff does not have any such facts in her concise statement, nor does she make any such statement in her declaration.

Furthermore, Providence's workers' compensation policy did not apply to plaintiff since her claim had been denied. Accordingly, plaintiff has failed to establish her prima facie case of workers' compensation retaliation.

## V. Oregon Rehabilitation Act–ORS 659A.100 et seq

Providence argues that plaintiff's adjustment disorder with anxiety does not qualify as a disability under the law.

To establish a prima facie case under the ADA, a plaintiff must show: (1) she is a disabled person within the meaning of the statute; (2) she is a qualified individual with a disability because she can perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered an adverse employment decision because of the disability. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996). The state statute is construed consistently with the ADA.

"Disability" means, under ORS 659A.100(1)(a):

A physical or mental impairment that substantially limits one or more major life activities.

Examples of major life activities include walking, sitting, standing, lifting, reaching, speaking, interacting with others, seeing, hearing, breathing, learning, sleeping, performing manual tasks, reproduction and working. OAR 839-006-0205(6)(a).

If a plaintiff satisfies the statutory requirements for a disability, the court then looks to the totality of the circumstances surrounding her discharge to determine whether the employer discriminated or failed to reasonably accommodate the disabled employee. Johnsen v. Mel-Ken Motors, Inc., 134 Or. App. 81, 88, 894 P.2d 540 (1995).

In support of its argument that plaintiff's adjustment disorder with anxiety does not qualify as a disability, Providence asserts plaintiff's impairment lasted for three months. <u>See</u>, OAR 839-006-0212 (factors to consider in deciding whether a person is substantially limited include the nature and severity of the impairment, the length of time an impairment persists or is expected to persist, and the permanent or expected long-term effect resulting from the impairment). In addition, Providence argues that stress on the job is not the kind of condition the ADA was intended to address. Furthermore, Dr. Yoshinaga opined that plaintiff was not substantially limited in any life activities.

Plaintiff responds that her symptoms may have improved within three or four months, but that the disorder still exists. Plaintiff testifies in her affidavit,

> I stopped seeing Dr. Yoshinaga only because my workers' compensation claim had been denied and he suggested I follow up with my primary treating physician. I continued to have problems after stopping seeing him. . . . My symptoms have not gone away. I continue to have problems with sleeping, anxiety, depression, staying focused, with memory loss, and problems with interpersonal relationships.

Walker Decl. ¶¶ 61, 63. Plaintiff asserts that Dr. Yoshinaga's medical reports support plaintiff's diagnosis.

Plaintiff has not satisfied her prima facie case that she is a disabled person within the meaning of the statute. Accepting as true plaintiff's statement that she would have continued seeing Dr. Yoshinaga had her workers' compensation claim not been denied, Dr. Yoshinaga himself has testified that plaintiff is not substantially limited in any activity. Druckman Aff., Yoshinaga Depo. at 61.

Furthermore, I agree with Providence that plaintiff offers insufficient evidence to support a finding that plaintiff was substantially limited in the activities of sleeping, breathing,

concentration, memory, and working. "Substantially limits" is defined in the regulations to mean:

> (a) The impairment renders the person unable to perform a major life activity that the average person in the general population can perform; or

> (b) The impairment significantly restricts the condition, manner or duration under which a person can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.

> (c) Factors that could affect whether an impairment "substantially limits a major life activity" include, but are not limited to, the presence of other impairments that combine to make the impairment disabling.

OAR 839-006-0205(12).

While plaintiff testifies to loss of concentration in watching movies, in enjoying hobbies like gardening, and in being with her kids, these limitations do not rise to the level of being *substantial*. Providence's Reply to Additional Facts, Walker Depo. at 50-55. She simply asserts that while enjoying other activities, the events at Providence "stick[] in my brain." Id. at 53. Furthermore, there is no evidence, other than plaintiff's own testimony, that the effects lasted longer than three months.

Finally, plaintiff has not provided evidence of any other jobs she cannot perform. Plaintiff admitted in her deposition that she could work as an HUC anywhere except at her old location. Id. at 51.

> To be substantially limited in the major life activity of working, a person must be significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the ability of an average person with comparable skill, experience, education or other job-related requirements needed to perform those same positions.

OAR 839-006-0205(6)(b).  Since plaintiff has failed to demonstrate that she is restricted in working in a broad range of jobs, she has failed to establish she is substantially limited in the major activity of working.

Because plaintiff does not qualify as a disabled person, Providence is entitled to summary judgment on this claim.

## CONCLUSION

Providence's Motion for Summary Judgment (#19) is granted and Providence is granted judgment on each of plaintiff's claims.  Providence's Motion to Strike Portions of Plaintiff's Declaration (#45) is granted in part and denied in part.  Plaintiff's Motion to Strike Part of Defendant's Reply (#47) is denied.  I also deny as moot Providence's Motion for Leave to File Supplemental Argument in Support of Motion for Summary Judgment (#57).

IT IS SO ORDERED.

Dated this ___12th_____ day of December, 2005.


___/s/ Garr M. King_____
Garr M. King
United States District Judge